# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-1632

FARZANA K., individually and as next friend of S.K.,

*Plaintiff-Appellant,*

*v.*

INDIANA DEPARTMENT OF EDUCATION, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:05-CV-266—**Rudy Lozano**, *Judge.*

ARGUED DECEMBER 8, 2006—DECIDED JANUARY 4, 2007

Before EASTERBROOK, *Chief Judge*, and POSNER and RIPPLE, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Few details of this litigation under the Individuals with Disabilities Education Act matter to this appeal, because the district court did not reach the merits. Instead it dismissed the complaint for want of jurisdiction to the extent that the parent and child seek relief from the school system in West Lake, Indiana. Claims against state officials remain pending, but a partial final judgment under Fed. R. Civ. P. 54(b) has led to this appeal with respect to all other defendants.

S.K. is an autistic teenager. His mother Farzana K. believes that the public schools are not providing an educational program appropriate to S.K.'s needs. In 2004 she sought judicial relief. The district court dismissed her suit in December 2004 after concluding that administrative remedies remained open. The final administrative decision was made on June 6, 2005, and the parties agree that Farzana K. had 30 days to seek judicial review. That period comes from Indiana law. The district court held that 20 U.S.C. §1415(i)(2)(B), which sets 90 days as the window when a state lacks "an explicit time limitation", does not apply in light of Ind. Code §4-21.5-5-5, which the judge deemed "explicit" for this purpose. In this court Farzana K. does not contest that ruling; we need not decide whether it is correct.

Farzana K.'s lawyer made the mistake of waiting until late afternoon of the last possible day: July 6, 2005. The Northern District of Indiana accepts electronic filings, and counsel submitted the complaint online. Making a second mistake, counsel used the docket number of the 2004 suit. The computer rejected the filing with the notation that the case had been closed. (This did not, however, prevent the court's computer from forwarding copies to the school system's lawyers.) Farzana K.'s lawyer then dispatched paper copies, but the courier did not reach the courthouse until the clerk's office had closed. On July 8 counsel tendered a new complaint, identical to the one the computer had rejected except that the space for a docket number was blank and the word "amended" had been deleted from in front of "complaint." The district court held that July 8 was too late—that, indeed, counsel's delay had deprived the court of subject-matter jurisdiction. 2005 U.S. Dist. LEXIS 38561 (N.D. Ind. Dec. 20, 2005). The court added that there was a second jurisdictional defect: the complaint had not been verified, as Indiana law requires.

We may assume that Indiana's courts treat both delay and failure to verify as "jurisdictional" failings. Yet whether federal jurisdiction exists is a matter of federal law, and there is no doubt about the source of the district court's power: 28 U.S.C. §1331, which authorizes federal courts to entertain claims arising under federal law, including the Individuals with Disabilities Education Act. Timely filing may be a condition to success, but it is not a jurisdictional requirement in federal court. See, e.g., *Day v. McDonough*, 126 S. Ct. 1675, 1681 (2006); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). The law is full of rules that are mandatory in the sense that courts must enforce them punctiliously if a litigant insists. Rules are not jurisdictional, however, no matter how unyielding they may be, unless they set limits on the federal courts' adjudicatory competence. See, e.g., *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235 (2006); *Eberhart v. United States*, 546 U.S. 12 (2005); *Kontrick v. Ryan*, 540 U.S. 443 (2004). Federal courts have been authorized to resolve disputes under the IDEA, so procedural hurdles—whether these concern timely filing or verification—are not "jurisdictional." Waiver and forfeiture therefore are possible, while jurisdictional rules must be enforced even if the litigants are content to relinquish their rights.

"Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit." Fed. R. Civ. P. 11(a). This means federal rule or federal statute, because state requirements for pleading do not apply in federal litigation. Rules established under the Rules Enabling Act supersede state norms. See, e.g., *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980); *Hanna v. Plumer*, 380 U.S. 460 (1965); *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006); *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 277 (7th Cir. 2003). Federal and state tribunals may (and do) use their own rules of procedure. Sometimes it can be

hard to determine whether a given norm is procedural or substantive, but when a federal rule covers the subject it must be applied no matter how the issue is characterized; that's the point of *Walker* and *Hanna*. No federal rule or statute requires complaints under the IDEA to be verified, and the district court erred in dismissing the complaint for failure to comply with a verification requirement that governs only in state court.

That leaves the 30-day time limit. Plaintiff submits that equitable tolling excuses the delay, but that doctrine deals with situations in which timely filing is not possible despite diligent conduct. See, e.g., *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990). Waiting until the last hours is not diligent; the errors that often accompany hurried action do not enable the bungling lawyer to grant himself extra time. See *Johnson v. McBride*, 381 F.3d 587 (7th Cir. 2004). Nothing prevented plaintiff's lawyer from acting a day or a week earlier, so that counsel could recover from any gaffe. If counsel blundered to his client's prejudice, the remedy is malpractice litigation against the culprit, not the continuation of litigation against an adversary who played no role in the error. See, e.g., *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 396-97 (1993); *United States v. 7108 West Grand Avenue*, 15 F.3d 632 (7th Cir. 1994).

It is hard to see why a court should invoke equitable tolling to supply a litigant with more time to apply for review of an agency's decision. The period for seeking administrative review, like the time for appealing a decision of the district court, usually is brief because a contest is ongoing. The loser simply notifies the other side (by a petition for review or a notice of appeal) that argument will resume in another forum. A lawyer who misses the time to file a notice of appeal cannot invoke "equitable tolling" to justify the delay. Rules may allow

judges to grant extra time. See Fed. R. App. P. 4(a)(5), (6). Once the time as extended under the Rules lapses, however, common-law tolling is unavailable; the existence of rules specifying when (and how far) time may be extended is incompatible with an open-ended power to add extra time on "equitable" grounds. Indeed, the Supreme Court has characterized the time limit for appellate review within a unitary system as "jurisdictional," e.g., *Browder v. Director of Corrections*, 434 U.S. 257 (1978), and although *Eberhart* calls that characterization into question, the Court continues to insist that "mandatory" rules be enforced whether or not they are dubbed "jurisdictional." Allowing more time under the rubric of equitable tolling, when a federal rule covers the subject of extensions, would just contradict the rule—and for no good reason. Once a litigant has received one or more decisions (whether from district courts or hearing officers under the IDEA) after formal adjudication, there is little point in bending the rules to allow another.

Because this 30-day time limit has been borrowed from Indiana law, however, whether it is subject to equitable tolling (and, if so, under what circumstances) is a question of state law. Farzana K. does not cite any Indiana decision holding that the period supplied by Ind. Code §4-21.5-5-5 may be extended via a tolling doctrine; our own research has not turned up any such holding. Instead Indiana's courts treat this time limit as absolute. See *Warram v. Stanton*, 415 N.E.2d 114 (Ind. App. 1981). Tolling therefore cannot save this litigation.

So was this complaint filed on time? It was. Counsel transmitted a complaint electronically on July 6, the 30th day after the state agency's decision. Litigation in federal court commences with the filing of the complaint, see Fed. R. Civ. P. 3, and the plaintiff then has 120 days to serve copies on each defendant, see Fed. R. Civ. P. 4(m). All defendants received copies well inside the 120-day

window after filing (indeed, all but the state agency received the complaint electronically on July 6).

Defendants insist that this complaint was not "filed" because a computer rejected it. Counsel certainly could and should have avoided this problem by submitting the complaint as the opening salvo in a fresh case, rather than as a new round in an old case. (Neither side contests the district court's decision to dismiss rather than stay the first suit. Dismissal is the norm when state remedies remain to be exhausted. See *Rose v. Lundy*, 455 U.S. 509 (1982), modified slightly by *Rhines v. Weber*, 544 U.S. 269 (2005).) Still, the fact remains that the complaint was tendered to the clerk's office on the 30th day, and the computer's reaction does more to show the limits of some programmer's imagination than to render the suit untimely. Had a paper copy of the complaint been handed over the counter on July 6, a deputy clerk would have crossed out the old docket number, stamped a new one, and filed the document; there is no reason to throw this suit out of court just because the e-filing system did not know how to take an equivalent step.

By refusing to accept complaints (or notices of appeal) for filing, clerks may prevent litigants from satisfying time limits. To prevent this—to ensure that judges rather than administrative staff decide whether a document is adequate—Fed. R. Civ. P. 5(e) was amended in 1993 to require clerks to accept documents tendered for filing. The last sentence of this rule provides: "The clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices." See also Fed. R. Civ. P. 83(b). The software that operates an e-filing system acts for "the clerk" as far as Rule 5 is concerned; a step forbidden to a person standing at a counter is equally forbidden to an automated agent that acts on the court's behalf.

Defendants contend that trying to file a complaint in a closed case is not a formal error, so that Rule 5(e) does not apply. Yet the equivalent mistake in filing paper copies is writing the wrong docket number on top of the papers, and that's an error of form rather than substance. Papers with bad docket numbers, or the wrong size (say, legal rather than letter), or with sections in the wrong order (say, a summary of argument ahead of the statement of facts), all display improper form.

Counsel may have used the old docket number in an effort to avoid paying a second filing fee. That raises the question what happens (for limitations purposes) if a complaint is lodged with the clerk on time, but the fee is not paid until after the period of limitations has expired. We held in *Robinson v. Doe*, 272 F.3d 921 (7th Cir. 2001), relying in part on Rule 5(e), that a complaint must be accepted and filed even if neither the fee nor an application to proceed *in forma pauperis* is enclosed, and that the complaint alone satisfies the statute of limitations. Accord, *McDowell v. Delaware State Police*, 88 F.3d 188 (3d Cir. 1996) (likewise relying on Rule 5(e)). See also *Williams-Guice v. Chicago Board of Education*, 45 F.3d 161 (7th Cir. 1995). If the fee is not paid promptly, however, the court is entitled to dismiss the complaint for failure to prosecute, and that dismissal will be conclusive. See Fed. R. Civ. P. 41(b). A plaintiff cannot avoid all required fees, but brief delay in payment is not a fatal misstep.

Very few appellate decisions other than *Robinson* and *McDowell* have dealt with Rule 5(e). *McClellon v. Lone Star Gas Co.*, 66 F.3d 98 (5th Cir. 1995), the only one worth mention, held that a district court must accept a "complaint" whose complete allegations read: "I have been denied the opportunity to return to work after being released from the doctor from an on-the-job injury." The clerk had to accept the paper (which had been filed on the last possible day) and require plaintiff to

elaborate later, the court held. Rule 5(e) will serve its function best if "proper form" covers all matters regulated by the rules of procedure. Clerks thus must take in whatever is tendered to them; a document may be rejected later if a judicial officer finds a problem, but the initial filing ensures that the process of vetting papers for compliance with the rules does not prevent satisfaction of time limits. An e-filing system likewise must accept every document tendered for filing; it cannot reject any paper that the clerk must accept.

Long before Rule 5(e) was amended to limit the clerk's power to reject documents tendered for filing, the Supreme Court held that a complaint (actually) filed in the wrong court generally satisfies a federal statute of limitations, provided that suit is re-filed in the right court promptly after the misadventure in the wrong forum ends. See *Burnett v. New York Central R.R.*, 380 U.S. 424 (1965); *Herb v. Pitcairn*, 325 U.S. 99 (1945). These decisions are not directly applicable; recall that we have been proceeding on the assumption that state rather than federal law supplies the period of limitations. Still, it would be odd if Rule 5(e), a part of federal law that governs *how* to file even when the *time* to file comes from state law, were deemed less favorable to plaintiffs than *Burnett* and *Herb*.

Counsel tendered a complaint for filing on July 6; it should have been accepted even though its deficiencies required amendment to show that a new suit was being initiated. Because the complaint was timely, and verification is unnecessary, the district court's judgment is vacated and the case remanded for decision on the merits.

No. 06-1632                                            9

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*