# Illinois Official Reports

## Appellate Court

---

### *Davis v. Village of Maywood*, 2020 IL App (1st) 191011

---

| | |
|---|---|
| Appellate Court Caption | ANDREW DAVIS and JAIRAME DAVIS, as Independent Administrator of the Estate of Lee Anthony Davis, Deceased, Plaintiffs-Appellants, v. THE VILLAGE OF MAYWOOD, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Third Division<br>No. 1-19-1011 |
| Filed | June 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-L-064020; the Hon. Cheryl D. Ingram, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Richard Dvorak, of Dvorak Law Offices, LLC, of Willowbrook, for appellants.<br><br>Howard C. Jablecki and Brian A.F. Gorka, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Ellis and Justice Cobbs concurred in the judgment and opinion. |

# OPINION

¶ 1    A problem arose for the two plaintiffs after they electronically transmitted their complaint to the clerk of the court for filing on the last morning of the statute of limitations period, a Friday, within the first two weeks of Cook County's mandated transition from paper to electronic court files. The clerk did not notify the plaintiffs' attorney until four days later, a Tuesday, that the document was being rejected because the accompanying e-filing envelope lacked counsel's "Cook County Attorney Code." Counsel then immediately corrected the omission, resubmitted the complaint, and the clerk reviewed, accepted, and file-stamped it on that Tuesday. Subsequently, however, the trial court denied the plaintiffs' motion to "excuse" the "tardy" filing pursuant to Illinois Supreme Court Rule 9(d)(2) (eff. Dec. 13, 2017), which empowers the court to grant "appropriate relief *** upon good cause shown" when an e-filed "document is rejected by the clerk and is therefore untimely." The trial court then granted the defendant's motion to dismiss the action as time barred. The plaintiffs appeal.

¶ 2    Because the plaintiffs filed a notice of appeal that complied with Illinois Supreme Court Rule 303 (eff. July 1, 2017), we have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) to review the final judgment of the trial court.

¶ 3    The plaintiffs' personal injury and wrongful death action against Village of Maywood, Illinois, stems from Gale Jackson's alleged aggravated domestic battery of Andrew Davis and murder of Andrew's father, Lee Anthony Davis, on July 13, 2017, despite police contact with Jackson at the three men's Maywood residence two days prior and on the day of the attack. Andrew and his father's estate are the two plaintiffs seeking compensation based on the willful and wanton negligence of Maywood's police officers in performing their duties to assist and protect victims of domestic violence.

¶ 4    On the last day of the one-year statute of limitations period for initiating civil actions against government entities (see section 8-101 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101 (West 2016))), the Davises' attorney submitted the complaint to the court clerk through Cook County's newly adopted electronic filing system. When the Davises' attorney was finalizing his client's pleading in mid-2018, Cook County's mandated e-filing system had been implemented less than two weeks before, on Monday, July 2, 2018.[1]

---

[1]E-filing in Illinois began with a pilot program in 2002, was expanded in 2012 to a permanent but optional program in the circuit courts, and then further expanded in 2014 as an option in criminal matters and traffic citations. *In re* Mandatory Electronic Filing of Civil Cases, Ill. S. Ct., M.R. 18368, at 1 (eff. Jan. 22, 2016). As of 2016, however, only 15 of 102 Illinois counties had opted to use any type of e-filing. Ill. S. Ct., M.R. 18368, at 1 (eff. Jan. 22, 2016). Because the implementation of discretionary e-filing programs had been insufficient, in 2016, the Illinois Supreme Court adopted

¶ 5    The Davises' attorney transmitted the complaint from the law firm's offices on Friday, July 13, 2018, at 10:32 a.m. by using the Odyssey eFileIL portal maintained by Tyler Technologies, Inc. Cook County's e-filing envelope required counsel to enter the unique seven-digit license number that is issued to attorneys by the Illinois Attorney Registration and Disciplinary Commission (ARDC), as well as to *twice* enter the five-digit Cook County Attorney Code that is issued by the clerk of the circuit court to identify specific attorneys and law firms. Before submitting the complaint, the Davises' attorney entered the ARDC number in the appropriate field. Counsel also entered his Cook County Attorney Code, as required in the "Lead Attorney" field under the "Party Information" section of the e-filing envelope, but did not reenter that number in the data field labeled "Case Cross Reference Number." The law firm's credit card information had been previously stored in the Odyssey system. Counsel ticked the law firm's payment information prior to transmitting the document to the clerk. The clerk's system assigned the matter circuit court case number 2018-L-64020, which is the case number still in use.

¶ 6    On Tuesday, July 17, 2018, at either 12:52 p.m. or 1:52 p.m. (both times appear in the record on appeal), the court clerk reviewed and rejected the submission because there was no Cook County Attorney Code in the "Case Cross Reference Number" field. That same afternoon, the Davises' attorney resubmitted the document with the identifying number. The clerk accepted and file-stamped the resubmitted document as of 4:21 p.m. and charged the filing fee to the law firm's credit card.

¶ 7    Tyler Technologies subsequently sent a clarifying e-mail on July 29, 2018, to inform its clients that "[a] recent update to eFileIL now requires filers to enter their 5-digit, numeric *Attorney Code* in the *Case Cross Reference Number field*" (emphases in original) and "[i]f an Attorney Code is not entered, you will not be able to proceed with the filing." We note that it is unclear from this wording whether the lack of a Case Cross Reference Number would make it impossible to transmit the filing or whether the document would be transmitted but later rejected by the clerk.

¶ 8    Defendant Maywood filed a motion to dismiss the Davises' pleading, arguing in part that the complaint was untimely filed four days after the lapse of the statute of limitations. The Davises responded to the substance of Maywood's motion to dismiss. The Davises also filed a separate motion in which they cited Illinois Supreme Court Rule 9(d)(2) (eff. Dec. 13, 2017), which we will set out below. The Davises argued the circumstances were "good cause" for the trial court to "excuse the allegedly late filing of the Complaint in this action, and hold that the Plaintiffs' claims are not time-barred."

¶ 9    After written and oral arguments, the trial court resolved both motions in Maywood's favor. The court reasoned that "the filing date [of the complaint] *** changes from the day that it was [first electronically submitted to the clerk to] the date that it's actually accepted by the Clerk's Office, which then makes the filing late." Rule 9(d)(2) provides a potential remedy when submitted documents are rejected and are therefore "untimely," and the trial judge acknowledged that the rule itself does not state a timeframe in which the moving party must seek relief from the court. Nevertheless, it was the judge's opinion that the Davises should have sought relief under Rule 9(d)(2) either upon receiving notice of the late acceptance by the

standards and policies mandating that all civil cases be e-filed in the circuit courts by 2018. Ill. S. Ct., M.R. 18368, at 1 (eff. Jan. 22, 2016).

clerk's office or at least "some time before the matter was brought up in the motion to dismiss." In other words, "[t]he problem [the judge identified] is the fact that the motion was not filed until the motion to dismiss was filed." The trial court limited its consideration to the timeliness arguments about the Davises' complaint and the Rule 9(d)(2) motion and did not rule on Maywood's additional arguments for dismissal regarding (1) the factual sufficiency of the allegations of willful and wanton conduct, (2) the governmental immunity that is afforded by sections 2-205 and 2-103 or section 2-109 of the Local Government and Governmental Employees Tort Immunity Act (745 ILCS 10/2-205, 2-103, 2-109 (West 2016)), or (3) the good-faith immunity in rendering emergency assistance that is set out in section 6-103(d) of the Mental Health and Developmental Disabilities Code (405 ILCS 5/6-103(d) (West 2016)).

¶ 10    Here, the Davises contend that the trial court misconstrued the facts and should have characterized the complaint as timely filed when it was first transmitted to the clerk with the necessary electronic filing fee, despite the omission of the "Case Cross Reference Number" from the electronic filing envelope. They contend it was neither obvious nor intuitive that a Cook County Attorney Code should have been entered in a data field that was labeled with some other name and that, regardless, the failure to enter this number on the form was a minor mistake that did not render the complaint itself defective. Given that Tyler Technologies saw a need to caution e-filers about the significance of the "Case Cross Reference Number," the Davises deduce that numerous other users had difficulty with that part of the filing form.

¶ 11    In the event we deem the complaint's filing untimely, the Davises' alternative argument is that the trial court had good cause to correct the filing date pursuant to Rule 9(d)(2). They contend it was a mistake for the clerk to reject the complaint four days after it was uploaded and timely transmitted without incident and that the clerk acted on criteria that is not published in a state law, supreme court rule, or local circuit court rule. They point out that the trial court denied the Rule 9(d)(2) motion solely because the court deemed the motion itself to be untimely after the defendant raised the statute of limitations defense. The Davises point out that plaintiffs generally do not file any motions until after the defendant has been summoned and appeared and that there was a possibility that Maywood would overlook and waive the statute of limitations argument. The Davises also contend there is no such thing as an untimely Rule 9(d)(2) motion, because the rule does not contain any reference to timing, which demonstrates that the trial court's ruling was unfair. Furthermore, the ruling is contrary to the committee comments for Rule 9, which state in part, "The implementation of electronic filing in Illinois courts should not impede a person's access to justice." Ill. S. Ct. R. 9, Committee Comments (adopted Dec. 13, 2017).

¶ 12    Maywood responds that what occurred was a user error, not a technical problem with the e-filing system that actually prevented the timely filing, and that a user error is not grounds for granting Rule 9(d)(2) relief. Maywood contends the court clerk appropriately exercised discretion to "receive" but not "file" the Davises' complaint when the pleading was first submitted without the Case Cross Reference Number and that, if the Davises believed the clerk erred, the Davises could have filed a *mandamus* action at the time. Or, if the Davises preferred to rely on a Rule 9(d)(2) motion, they should have filed it much earlier, such as (1) in October 2018 when Maywood was served, (2) in December 2018 when Maywood filed its appearance, or (3) in December 2018 when Maywood filed its motion to dismiss relying in part on the statute of limitations, instead of filing in March 2019 (with leave of court), only after Maywood's motion was fully briefed. Maywood argues that reliance on Rule 9(d)(2) should

be subject to the doctrines of *laches* or waiver and that granting the Davises' motion would have been "highly unusual" and improper, as well as "extremely inconvenient" and "extremely prejudicial" to Maywood. Maywood concludes that the Davises' access to justice has not been impeded as they argue, because the Davises "[do] not possess one of the exemptions listed in Rule 9, such as disability, self-representation, or lack of computer or internet access."

¶ 13 Section 2-619(a) of the Code of Civil Procedure allows for the involuntary dismissal of an action that "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2016). Whether a cause of action was properly dismissed under section 2-619(a)(5) of the Code of Civil Procedure based on the statute of limitations is a matter we review *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99, 820 N.E.2d 455, 459 (2004). The abuse of discretion standard governs our review of the trial court's denial of the plaintiffs' Rule 9(d) motion. See *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 354, 875 N.E.2d 1065, 1079 (2007) (abuse of discretion standard applies when reviewing whether good cause exists under Illinois Supreme Court Rule 183 (eff. Jan. 1, 1964) to grant additional time to remedy an unintentional noncompliance with the procedural requirement of signing discovery responses).

¶ 14 Our resolution of the parties' arguments depends upon Rule 9(d)'s "Timely Filing" language. Ill. S. Ct. R. 9(d) (eff. Dec. 13, 2017).

¶ 15 The principles for construing the supreme court's rules are familiar and well established, as they are the same standards that govern the interpretation of statutes. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22, 90 N.E.3d 400.

> "When construing a rule of the supreme court, a court's primary goal is to ascertain and give effect to the intent of the drafters. The most reliable indicator of that intent is the language used, given its plain and ordinary meaning. In determining the plain meaning of the rule's terms, a court must consider the rule in its entirety, keeping in mind the subject it addresses and the apparent intent of the drafters in enacting it. Courts will also interpret the rule so that no part of it is rendered meaningless or superfluous and will not depart from the plain language of the rule by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Ferris*, 2017 IL 121297, ¶ 22.

¶ 16 Rule 9(d) states:

> "(d) Timely Filing. Unless a statute, rule, or court order requires that a document be filed by a certain time of day, a document is considered timely if submitted before midnight (in the court's time zone) on or before the date on which the document is due. A document submitted on a day when the clerk's office is not open for business will, unless rejected, be file stamped as filed on the next day the clerk's office is open for business. The filed document shall be endorsed with the clerk's electronic file mark setting forth, at a minimum, the identification of the court, the clerk, the date, and the time of filing.
>
> (1) If a document is untimely due to any court-approved electronic filing system technical failure, the filing party may seek appropriate relief from the court, upon good cause shown.
>
> (2) If a document is rejected by the clerk and is therefore untimely, the filing party may seek appropriate relief from the court, upon good cause shown." Ill. S. Ct. R. 9(d) (eff. Dec. 13, 2017).

¶ 17     This rule specifies that a document will be considered timely filed if it is electronically transmitted to the court clerk by midnight of the date the document is due and that a transmission on a day when the clerk's office is closed (*i.e.*, on a holiday or weekend) will shift the filing date to the next business day. Given the rule's interchanging use of the words "filing" or "filed" with the word "submitted" in the first two sentences, we read the rule to generally equate a document's filing with the litigant's electronic submission of a document to the court clerk. The two numbered paragraphs that follow indicate that a submission/filing may be rendered "untimely" by a technical problem that prevents the clerk from receiving it (paragraph (1)) or a rejection by the clerk (paragraph (2)). The rule specifies that, if either of these two problems results in a document being resubmitted to the clerk after a filing deadline, then the filing party may pursue "appropriate relief from the court, upon good cause shown."

¶ 18     The "appropriate relief" language is broad, and it makes the trial court's determination fact dependent. The rule, for instance, does not limit "good cause" to particular grounds for the clerk's rejection of a document, does not suggest that requests for relief are disfavored, does not list factors that the trial court should take into consideration, and does not specify the type of relief that may be granted by the court. Also, the rule does not specify a timeframe for litigants to seek relief. Rule 9(d) provides flexibility to litigants and the court "upon good cause shown" to accommodate problems that occur while using Cook County's electronic system of filing and maintaining court records.

¶ 19     Applying Rule 9(d) as a whole, if the document the Davises successfully submitted through the electronic portal on Friday, July 13, 2018, at 10:32 a.m. had been accepted by the court clerk, its filing date and time would have coincided with the attorney's transmission date and time, which was within the limitations period that expired at midnight that day. The rule next indicates that the clerk's rejection of the document on Tuesday, July 17, 2018, meant that counsel's electronic transmission the prior Friday had no effect, unless the trial court subsequently granted "appropriate relief." The plaintiffs resubmitted the document with the necessary correction to the filing envelope during the afternoon of July 17, 2018, and the clerk reviewed, accepted, and file-stamped the document at 4:21 p.m. that same day. Thus, according to the plain language of this rule which is specifically about e-filing, the complaint was filed, but not timely filed, when it was stamped by the clerk with Tuesday's date instead of the previous Friday's date.

¶ 20     It is also our opinion, however, that the Davises' Rule 9(d)(2) motion demonstrated good cause for the trial court to correct the date that was stamped by the clerk so that the pleading was considered filed as of the date it was first submitted to the clerk.

¶ 21     Rule 9(d)(2)'s broad relief language indicates that we must consider the totality of the circumstances. From that perspective, good cause for the court to correct the filing date is demonstrated in part by the fact that the problem occurred during Cook County's first two weeks of switching from conventional paper filing to an electronic system. During this transition period, the e-filing procedures that would be followed by the clerk and litigants were unfamiliar to all involved and had not been fully tested through experience. There were bound to be questions and issues as the clerk and litigation counsel became accustomed to the nuances of the new and dramatically different method of preparing, submitting, and processing legal documents. Accordingly, we give counsel the benefit of any doubt about the accuracy and completeness of his electronic submission during this timeframe. See, *e.g.*, *Geer v. Cox*, 219 F.R.D. 527, 528 (D. Kan 2003) (granting motion for reconsideration in order to "give [the]

plaintiff benefit of the doubt" where case management and electronic court filing system had been implemented for only one month).

¶ 22    Good cause is demonstrated primarily by the fact that the submission the clerk rejected was identical to the document that the clerk later accepted, with the exception of a minor change that counsel was asked to make only to the e-filing envelope for the second submission. That is, there was no defect in the complaint itself when the clerk chose to reject counsel's first submission due to a flaw in the e-filing envelope. Counsel's error was limited to omitting a five-digit number required for Cook County's e-filing envelope. The e-filing envelope is not part of a complaint and is not required by our rules of civil procedure, the law that sets out the limitations period for filing a tort suit, or the additional law that shortens the limitations period against a local government such as Maywood. The e-filing envelope is instead part of the new and unfamiliar administrative procedure for filing a document with the circuit court.

¶ 23    Counsel's minor error of omitting that second identification number is similar to what occurred in *Farzana K. v. Indiana Department of Education*, 473 F.3d 703 (7th Cir. 2007), in which the Seventh Circuit held that a complaint electronically filed under the wrong docket number was timely filed, even though the electronic system rejected the filing because of the incorrect number. The court reasoned that, in a conventional paper-filing system, an incorrect docket number would not have affected the timely filing of the complaint. *Farzana K.*, 473 F.3d at 707. "[T]he equivalent mistake in filing paper copies is writing the wrong docket number on top of the papers, and that's an error of form rather than substance." *Farzana K.*, 473 F.3d at 707. "Had a paper copy of the complaint been handed over the counter on July 6, a deputy clerk would have crossed out the old docket number, stamped a new one, and filed the document." *Farzana K.*, 473 F.3d at 707. Therefore, the court reasoned, "there is no reason to throw this suit out of court just because the e-filing system did not know how to take an equivalent step." *Farzana K.*, 473 F.3d at 707. Here, too, there was a failure of form rather than substance, and it seems likely the failure would have been corrected at the clerk's counter had counsel been able to file in person instead of through the new, mandatory e-filing system.

¶ 24    In *Vince v. Rock County*, 604 F.3d 391 (7th Cir. 2010), the plaintiff used the wrong "event code" to e-file a notice of appeal. The court noted that "[t]here may well be cases in which a filing is so riddled with errors that it cannot fairly be considered a notice of appeal, and therefore its filing, electronic or otherwise, will not vest an appellate court with jurisdiction," but the court found that typing or selecting the wrong "event code" was inconsequential and determined the filing was timely. *Vince*, 604 F.3d at 393.

¶ 25    Understandably, the court was not as forgiving in *United States v. Carelock*, 459 F.3d 437 (3d Cir. 2006), in which a notice of appeal had an incorrect name for the defendant, the wrong docket number, the wrong district court judge's name, and the wrong judgment date from which the defendant wished to appeal. In other words, the notice of appeal was not recognizable as a notice of appeal concerning the *Carelock* case. That notice of appeal did not perform its basic function of informing the court and opposing party of the court order or judgment that the filing party wanted to have reviewed.

¶ 26    The failure to enter a number in the Case Cross Reference Number data field is the equivalent of keying the wrong docket number or wrong "event code" into the electronic recordkeeping system, rather than carelessly tendering a document from a different proceeding.

¶ 27    Another relevant fact is that the Davises' first e-filing envelope was, for the most part, correct and complete, in that it correctly identified their attorney by name, law firm's name,

and ARDC license number and even included counsel's Cook County Attorney Code in the "Lead Attorney" section but not in the "Case Cross Reference Number" drop-down field.

¶ 28 Furthermore, we would not expect to input the same number twice on the same form. And, as the plaintiffs' counsel argues, it would neither be obvious nor intuitive that the data field labeled "Case Cross Reference Number" was an additional place to key in counsel's Cook County Attorney Code. We question why this field was not and is not simply labeled "Cook County Attorney Code." The name of the field is confusing at best and misleading at worst. The problem that counsel had can be attributed in part to that imperfection in the e-filing system.

¶ 29 The Davises have pointed out that Tyler Technologies subsequently saw the need to warn its clients by e-mail about the significance of the Case Cross Reference Number field.

¶ 30 In addition, our own research discloses an undated six-page document on the clerk's website, which conveys "Special Instructions for eFiling in Cook County." The first item on that list states:

 "Urgent Information

1. When eFiling a new case or subsequent filings, Cook County attorneys must input a Cook County Attorney Code Number in the Case Cross Reference Number field in Section 2 on the initial screen. Select Cook County Attorney Code in the drop down, click Add Case Cross Reference Number and then click Save changes. Failure to add your Cook County Attorney Code Number in the Case Cross Reference Number field will cause your filings to be rejected." Special Instructions for eFiling in Cook County, http://www.cookcountyclerkofcourt.org/NewWebsite/efile-Information-Portal.aspx (lasted visited May 21, 2020) [https://perma.cc/UM38-TCLX].

¶ 31 The circumstances support counsel's contention that the significance of the Case Cross Reference Number field was unclear in the first few weeks of mandatory e-filing, before the clerk and litigation counsel were experienced with all the procedural details of the new system and before the "Urgent" warnings were issued to all litigation counsel. The circumstances also indicate that the omission of the Case Cross Reference Number was a minor, understandable error that cannot be attributed entirely to the attorney who submitted a properly formatted and complete complaint and a near-perfect e-filing envelope.

¶ 32 In addition to the completeness of the complaint and the near-completeness and accuracy of the first e-filing information, we have also considered the timing of the filing. Counsel took an unnecessary risk by waiting to file on the last day of the statute of limitations, but this was not a midnight filing. Had the same error occurred at 11:59 p.m. instead of 10:32 a.m., we would suspect that haste to submit the document by midnight played a part. But it would seem that, by starting in the morning that day, counsel had ample time to upload the complaint and complete the e-filing form without rushing. Counsel had sufficient time to fill in all the necessary data fields with accuracy and completeness and to deal with any confusion or technology problems that arose. Counsel even had sufficient time to drive from his law office in Willowbrook (Du Page County) to the Cook County circuit court in order to manually file the pleading if it had become necessary. Counsel's midmorning attention to his task would not be reason alone to grant relief under Rule 9(d)(2), but it is a fact that in our opinion weighs, slightly, in favor of granting the motion. See *Peraino v. County of Winnebago*, 2018 IL App (2d) 170368, 101 N.E.3d 780 (where paralegal first attempted at 11:58 p.m. to upload motion to reconsider and did not succeed until 12:04 a.m., motion was not timely filed due to user

error). Furthermore, the attorney promptly corrected the omission of the number the same afternoon that he was notified of the problem. The first submission was rejected by the clerk on Tuesday at either 12:52 or 1:52 p.m., resubmitted by counsel, and accepted and file-stamped by the clerk at 4:21 p.m. on the same day. This timely correction suggests that the omission of one number from the first e-filing envelope was not caused by counsel's inattentiveness to e-filing procedures but was instead caused by the e-filing procedure itself. This is another fact that slightly weighs in favor of granting the plaintiffs' motion.

¶ 33     The fact that the trial court found dispositive, that the plaintiffs' counsel did not file a Rule 9(d)(2) motion until after the defendant had moved to dismiss the pleading, is unrelated to e-filing the complaint. The trial court gave no explanation for why the timing of the Rule 9(d)(2) motion was significant. We have focused our analysis on the filing of the complaint itself, rather than on what occurred during the subsequent months of litigation.

¶ 34     We disagree with Maywood's contention that only a technical problem with the hardware, software, or facility maintained by the e-filing provider or the clerk would be grounds for granting a Rule 9(d)(2) motion. *See Peraino*, 2018 IL App (2d) 170368 (distinguishing between user error and technical problems with the provider or clerk's electronic system). Technical impediments are addressed by Rule 9(d)(1), which is not at issue here. Ill. S. Ct. R. 9(d)(1) (eff. Dec. 13, 2017). The rule the Davises relied on is applicable when "a document is rejected by the clerk and is therefore untimely." Ill. S. Ct. R. 9(d)(2) (eff. Dec. 13, 2017). We also disagree with Maywood's contention that a *mandamus* action against the clerk would have been prudent. The rule at issue expressly provides the avenue for seeking the court's assistance. Even if the Davises had filed a *mandamus* action, it likely would have been consolidated into this previously filed case and, thus, would have unnecessarily added to the plaintiffs' expenses without increasing the likelihood of success. And, as we indicated above, we fail to see any relevance to when the Rule 9(d)(2) motion was filed and have instead considered the circumstances that caused the complaint to be filed four days after the statute of limitations period. Finally, since the Davises have not argued they are exempt from mandatory electronic filing, there was no reason for Maywood to discuss the portion of Rule 9 that provides exemptions for persons who are disabled, self-represented, or lack access to a computer. See Ill. S. Ct. R. 9(c) (eff. Dec. 13, 2017).

¶ 35     Having considered the rule and the circumstances of this case, we find that it was an abuse of discretion for the trial court to deny the Davises' motion for relief upon good cause shown and an error to grant the motion to dismiss the pleading as untimely filed. We reverse those determinations. We remand with directions to the trial court to correct the filing date *nunc pro tunc*. We will not address the additional arguments that were briefed for the trial court, including the factual sufficiency of the complaint and whether the defendant could invoke statutory immunities from suit, as those arguments were not considered by the trial court.

¶ 36     Reversed and remanded with directions.